1  PATRICIA RODRIGUEZ, ESQ. Bar No. 270639
   LAW OFFICES OF PATRICIA RODRIGUEZ
2  739 E. Walnut Street, Suite 204
   Pasadena, California 91101
3  Telephone: 626-282-0500
   Fax: 626-282-0522
4
5  Attorney for Plaintiffs,
   ROBERT FRANKLIN
6  DEBBIE FRANKLIN
7
8                    UNITED STATES
9       CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES
10
11                                  Case No.: CV12-8252 - STO (MEWx)
12  ROBERT FRANKLIN, an individual;   VERIFIED COMPLAINT:
    DEBBIE FRANKLIN, an individual
13                                    1.  DECLARATORY RELIEF
14              Plaintiffs,           2.  ACTUAL FRAUD
15  vs.                               3.  NEGLIGENT LENDING
16  ACCREDITED HOME LENDERS, INC, a   4.  DECEIT – FRAUDULENT CONCEALMENT
17  Business Entity; U.S. BANK NATIONAL
    ASSOCIATION, a Business Entity; FCI  5.  NEGLIGENCE
18  LENDER SERVICES, INC, a Business
    Entity; TOWN CAPITAL I, LLC, a    6.  BREACH OF CONTRACT
19  Business Entity; DOUBLE F
    MANAGEMENT GROUP, LLC, a          7.  BREACH OF GOOD FAITH AND FAIR
20  Business Entity; MORTGAGE             DEALING
    ELECTRONIC REGISTRATION
21  SYSTEMS, INC, a Business Entity; and  8.  VIOLATION OF TILA
    Does 1-10 inclusive,
22                                    9.  VIOLATION OF RESPA
23              Defendants.           10. BREACH OF FIDUCIARY DUTY
24                                    11. UNCONSCIONABILITY
25                                    12. QUIET TITLE
26                                    13. VIOLATION OF BUSINESS & PROFESSIONS
27                                    14. INTENTIONAL INFLICTION OF
                                          EMOTIONAL DISTRESS
28
                                        JURY TRIAL DEMANDED

ADVERSARY COMPLAINT



COME NOW the Plaintiffs, Robert Franklin and Debbie Franklin (hereinafter "Plaintiffs") and complaining the following of each Defendant:

## JURISDICTION AND VENUE

1. The transaction and events that are the subject matter of this Complaint all occurred within the county of Los Angeles, State of Californian.

## PARTIES

2. Plaintiffs are the residents of and the owners in fee simple of the property located at 22039 Sunrise View Place, Santa Clarita, California 91390 (the subject property), which is the subject of this litigation.

3. Plaintiffs are informed and believe, and thereon allege, that Defendant Accredited Home Lenders, Inc. ("Accredited Home Lenders") a Business Entity, form unknown, authorized to do business in the State of California. Accredited Home Lenders is the original mortgage lender for loan used to purchase the property ("the loan" or "the subject loan").

4. Plaintiffs are informed and believe, and thereon allege, that Defendant U.S. Bank National Association ("U.S. Bank"), a Business Entity, form unknown, authorized to do business in the State of California. Plaintiffs allege that U.S. Bank is the Trustee for the Citigroup Mortgage Loan Trust 2007-AHL3 ("Citigroup Trust").

5. Plaintiffs are informed and believe, and thereon allege, that Defendant FCI Lender Services, Inc. ("FCI"), a Business Entity, form unknown, authorized to do business in the State of California. Plaintiffs allege that FCI is the current Servicer of Plaintiffs' loan.

6. Plaintiffs are informed and believe, and thereon allege that Defendant Town Capital I, LLC ("Town Capital"), a Business Entity, form unknown, authorized to do business in the State of California. Plaintiffs allege that Town Capital is the Investor of Plaintiffs' loan.

7.      Plaintiffs are informed and believe, and thereon allege, that Defendant Double F Management Group, LLC ("Double F"), a Business Entity, form unknown, authorized to do business in the State of California. Double F alleges that is a Creditor on Plaintiffs' loan.

8.      Plaintiffs are informed and believe, and thereon allege, that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation doing business in the State of California, with its principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia 20190.  MERS is a process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked.  MERS eliminates the need to prepare and record assignments when trading residential mortgage loans.  MERS is the alleged nominee for the lender beneficiary of the Deed of Trust.

9.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, and therefore sue these Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

10.     The use of the term "Defendants" in any of the allegations in this complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severely, not only named Defendants, but all Defendants designated as Does 1 through 10, as well.

11.     Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, even or happening set forth in this complaint, and that each of said fictitiously named Defendants are indebted to Plaintiffs as hereinafter alleged.

12.     Plaintiffs are further informed and believe, and thereon allege, that at all times herein mentioned Defendants were agents, servants, employees, alter egos, superiors, successors-in-interest, joint venturers and/or co-conspirators of each of their co-Defendants and in doing the

things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors successors-in-interest, joint venturers, and/or co-conspirators with the permission and consent of their co-Defendants, and consequently each Defendants named herein, and those Defendants named herein as Does 1 through 10, inclusive, are jointly and severally liable to Plaintiffs for the damages and harm sustained as a result of their wrongful conduct.

13.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

14.     Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof.  Defendants' wrongful acts include inter alia, all of the

1  acts that each of them are alleged to have committed in furtherance of the wrongful conduct of

2  complained of herein.

3  15.    Any applicable statutes of limitations have been tolled by the Defendants' continuing,

4  knowing, and active concealment of the facts alleged herein. Despite exercising reasonable

5  diligence, Plaintiffs could not have discovered, did not discover, and was prevented from

6

7  discovering, the wrongdoing complained of herein.

8  16.    In the alternative, Defendants should be estopped from relying on any statutes of

9  limitations. Defendants have been under a continuing duty to disclose the true character, nature,

10  and quality of their financial services and debt collection practices. Defendants owed Plaintiffs

11  an affirmative duty of full and fair disclose, but knowingly failed to honor and discharge such

12  duty.

13

14

15  ## FACTUAL ALLEGATIONS

### Securitization

16  17.    For the past ten years, hundreds of thousands of residential mortgages were bundled

17  together (often in groups of about 5,000 mortgages), and investors were offered the opportunity to

18  buy shares of each bundle. This process is called securitization.

19

20  18.    Each such bundle of residential mortgages was given a name, such as "Certificate holders

21  of Citigroup Mortgage Loan Trust Pass-Through Certificates Series 2007-AHL3."

22  19.    The name indicates information about the particular trust, such as the year it was created

23  (2007), and its contents, such as the type certificates and series.

24  20.    The real estate mortgage investment conduit, or what is otherwise known as a REMIC[1], is

25

26

27  [1] Entities meeting the six statutory requirements for a REMIC will not be treated as a separate taxable entity and so will pay no federal income taxes. Rather, the income of a REMIC is allocated and taken into account by the holders of the residual interests.

28

the exclusive vehicle for holding fixed pools of mortgages and issuing multiple classes of interests to investors.

21.    ~~The pooling and servicing agreement ("PSA") creates the residential mortgage backed~~ securitized trust.

22.    To maintain its status as a REMIC, the trust is governed by the PSA, which has some mandatory rules and procedures that must be followed for the sales and transfers of the mortgages and mortgage notes from the originators to the trust.

23.    The PSA is specifically designed to protect the REMIC status and resulting tax treatment of the trust (and to balance the sometimes-conflicting interests of the various classes of bondholders, as well as those of the issuer, servicers, and others).

24.    For every REMIC trust, there is a sponsor and a depositor.

25.    A sponsor basically collects all the necessary loans and bundles them together in one large pool of loans.

26.    A depositor deposits the loans into the trust.

27.    The purpose of the sponsor and the depositor is to maintain compliance with REMIC and other Tax Code provisions.

28.    Compliance means that under the PSA, two "true sales" must occur (before the loans are sold as certificates) between the time the loan is originated and the time it is deposited into the trust.

29.    The true sales are (supposed to be) from the originator to the sponsor (1st sale), and then to the depositor (2nd sale).

30.    The most basic securitized structure includes the following parties: the originator (party A), the sponsor (party B), the depositor (party C), and the trust (party D).

31.    The first "true sale" is from the originator to the sponsor. The second "true sale" is from

the sponsor to the depositor. The purpose of the depositor then is to deposit the loans into the issuing entity or trust.

32.    Once the issuing entity or trust takes possession of the loans (which are now segmented into the tranches), the loans are ready to "sell" (to the different entities that had already spoken for them) as certificates or bonds, known as mortgage-backed securities. These are then resold to investors.

33.    The other primary but non-designated player in the securitization process is the master document custodian ("MDC") for the trust.

34.    The MDC is entrusted with the physical custody of all of the originals of the notes, mortgages, and the assignment, sales and purchase agreements.

35.    Section 2.01 of most PSAs includes the mandatory conveyancing rules for the trust and the representations and warranties. The basic terms of this section of the standard PSA are set-forth below:

> "2.01 Conveyance of Mortgage Loans. (a) The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificate holders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund, and the Trustee, on behalf of the Trust, hereby accepts the Trust Fund. (b) In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered or caused to be delivered to the Trustee for the benefit of the Certificate holders the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the original Mortgage Note (except for no more than up to 0.02% of the mortgage Notes for which there is a lost note affidavit and the copy of the Mortgage Note) bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee. To the extent that there is no room on the face of any Mortgage Note for an endorsement, the endorsement may be contained on an allonge, unless state law does not so allow and the Trustee is advised by the Responsible Party that state law does not so allow. If the Mortgage Loan was acquired by the Responsible Party in a merger, the endorsement must be by "[last endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the last endorsee while doing business under another name, the endorsement must be by "[last endorsee], formerly known as [previous name]; ..."

7
**VERIFIED COMPLAINT**

36.     The MDC must also execute representations and attestations that all of the transfers really and truly occurred "on time" and in the required "order," and that "true sales" occurred at each link in the chain, as described in the PSA (quoted above).

37.     Each trust also has a closing date, which is the date that the individual mortgages are transferred to the trust custodian, who must certify, in accordance with the above, that for each mortgage, the custodian has a mortgage note endorsed in blank, and proof that the ownership of the note has been transferred.

38.     This proof is most often an assignment of the mortgage.

39.     Most trusts include the following or equivalent language regarding the assignments:

"Assignments of the Mortgage Loans to the Trustee (or its nominee) will not be recorded in any jurisdiction, but will be delivered to the Trustee in recordable form, so that they can be recorded in the event recordation is necessary in connection with the servicing of a Mortgage Loan."

40.     Title insurance companies issued policies guaranteeing that the trust had clear title to the mortgages.

41.     When widespread defaults occurred, trustees discovered that the laws regarding mortgage assignments varied significantly from state to state.  Many issues regarding such assignments were simply unresolved.

42.     One of the most significant issues was whether mortgage assignments could be back-dated or have retroactive effective dates.

43.     This issue arose because trustees and their lawyers discovered in the foreclosure process that the assignments could not actually be located, or that certain states did not allow blank assignments.

44.     To solve the problem of the missing assignments, new assignments were specially made for recordation when the time came to initiate foreclosure proceedings.

45.     Because the question of retroactive assignments went unresolved, most of these new,

specially made assignments did not set forth the actual date that the assignment took place.

46.     These new, specially made assignments were prepared by selected law firms and companies that specialized in providing to banks and mortgage companies "mortgage default services."

47.     In jurisdictions with a high rate of mortgage defaults, over 80% of the filed mortgage assignments in the last three years have been prepared and filed by the same five or six law firms and default processing companies.

48.     In many states, two such assignments are prepared and filed.

49.     When the authority of MERS to file foreclosure and assignments was challenged (in most jurisdictions), with varying results, a non-MERS assignment was prepared as well.

50.     In all of these cases, the assignments are prepared to conceal the actual date that the property was acquired by the trust.

51.     An examination of many of these assignments, for example, showing the grantee of the trust, such "Certificate holders of Trust 2007," will reveal that most of the assignments were prepared and filed not in 2007 but in 2008 and 2009.

52.     In reality, the mortgages and notes were actually assigned – albeit defectively – years earlier prior to the closing date of the trust.

53.     While the exact closing date can only be determined by looking at the trust documents, any trust that includes the year 2007 in its title most likely closed in 2007.

54.     If a mortgage assignment is dated, notarized and filed in a year after the year set forth in the name of the grantee trust on the assignment, it is actually an assignment that was "specially" and fraudulently made to facilitate initiating foreclosure proceedings.

55.     Repeatedly, courts have asked trustees to explain why they were acquiring nonperforming loans and whether such acquisition was a violation of the trustee's fiduciary duty to the trust.

56.    No trustee has ever come forth and explained that the trust actually acquired the loan years before the assignment.

57.    ~~As a result, there are many decisions with observations similar to this observation made by~~ Judge Arthur M. Schack of Kings County, New York, in <u>HSBC Bank v. Valentin</u>, 21Misc. 3d 1124 [A]:

> "Further, according to Plaintiff's application, the default of Defendants Valentin and Ruiz began with the nonpayment of principal and interest due on January 1, 2007. Yet, four months later, Plaintiff HSBC was willing to take an assignment of the instant nonperforming loan. The Court wonders why HSBC would purchase a nonperforming loan, four months in arrears?"

58.    And in <u>Deutsche Bank National Trust Co. v. Harris</u>, Judge Arthur M. Schack, Kings, New York, Index No. 39192/2007 (05 Feb 2008):

> "Further, the Court requires an explanation from an officer of Plaintiff Deutsche Bank as to why, in the middle of our national sub-prime mortgage financial crisis, Deutsche Bank would purchase a nonperforming loan from Indymac ... "

59.    In lieu of valid assignments, trusts continue to rely on assignments specially made by their own law firms and mortgage default service companies.

60.    The courts are finally starting to uncover these fraudulent assignments and are requiring that the foreclosing trusts prove that they own the mortgage and note in the foreclosure action, without relying on assignments that misrepresent the date of the actual transfer to the trust and the authority of the signers of the original lenders.

61.    Although Plaintiffs were clearly set up to default on their loan based on their lack of qualification for the amount provided, they still made each and every monthly payment as they became due in an effort to avoid defaulting under the loan.

**The Plaintiffs' Loan**

62.    On July 9, 2007, Plaintiffs executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of $500,000.00.

63. Plaintiffs signed a promissory note and executed a Deed of Trust in favor of Accredited Home Lenders, who was denominated the "lender" in the subject deed.

64. ~~Stewart Title Guaranty was denominated in the subject deed as the "trustee" in the subject deed.~~

65. MERS was denominated in the subject deed as the "beneficiary" and "nominee."

66. The Deed of Trust shows the MERS Identifying Number ("MIN") as 100176107062879001 and the MERS Servicer Website indicates that FCI Lender Services, Inc. is the servicer and Town Capital I, LLC is the investor.

67. This document was filed as document number 20071674175 in the Official Records of Los Angeles County, California.

68. Under the Uniform Residential Loan Application for the refinance, the amount of employment income states an amount highly inflated for Borrower Robert Franklin.

69. Borrower Robert Franklin never made nearly as much as the loan officer from Accredited Home Lenders inserted in the Uniform Residential Loan Application.

70. Plaintiffs believe that the interviewer and Accredited Home Lenders fabricated the employment income per month so that Plaintiffs would be approved for the loan.

71. The interviewer never met with the Plaintiffs face-to-face. The interviewer only spoke to Borrower Robert Franklin over the phone.

72. Accredited Home Lenders made-up an employment income for Borrower that was high enough so that the Plaintiffs would be able to qualify for the loan, and so that Accredited Home Lenders and the interviewer would be able to close the deal and make the commission.

73. When the loan closed, Accredited Home Lenders was the servicer of the loan.

74. Plaintiffs' loan was a securitized loan.

75. On information and belief, the note was allegedly transferred/sold to Citigroup Mortgage

1  Loan Trust 2007-AHL3 as a mortgage backed security of which U.S. Bank is trustee.

2  76.    U.S. Bank is the trustee for the securitization pool that contains the Plaintiffs' loan, under a

3  pooling and servicing agreement, between either one of them, and other unknown third parties.

4
5  77.    On information and belief, there was a failed and defective attempt to sell, transfer, and

6  securitize the note into the Citigroup Mortgage Loan Trust 2007-AHL3 with a closing date of

7  June 29, 2007.  Any assigned of the Deed of Trust recorded after the closing date violates the

8  Citigroup Trust agreement and invalidates the ownership of the property to the foreclosing party.

9  78.    A Collateral Assignment of Beneficial Interested of Deed of Trust was filed as document

10  number 20110961540 in the Official Records of Los Angeles County on July 19, 2011.

11
12  79.    A Corrective Collateral Assignment of Beneficial Interest of Deed of Trust was filed as

13  document number 20111200407 in the Official records of Los Angeles County, California on

14  July 19, 2011.

15  80.    An Assignment of Deed of Trust ("Assignment of Deed of Trust #1") was filed as

16  document number 20120559400 in the Official Records of Los Angels County, California on

17  April 13, 2012.

18
19  81.    An Assignment of Deed of Trust ("Assignment of Deed of Trust #2") was filed as

20  document number 20120559401 in the Official Records of Los Angeles County, California o

21  April 13, 2012.  This document purports to be executed by MERS.

22  82.    The Assignment of Deed of Trust #2 was executed by Brett Behrens as "Assistant

23  Secretary" on behalf of MERS.

24
25  83.    On information and belief, Brett Behrens is employed by FCI not MERS.  Brett Behrens

26  works in the Portland, Oregon office of FCI, and the Assignment was acknowledged in Oregon.

27  There is no evidence, such as a power of attorney, which would indicate that Brett Behrens has

28  the legal or corporate authority to sign on behalf of MERS.

84.     The Assignment of Deed of Trust #2 was recorded more than 3 years beyond the closing date for the Citigroup Trust. This postulate assignment was done directly from MERS to Town Capital I, LLC, bypassing the required process to insure a complete chain of endorsements.

85.     In order for securitization to have occurred, there would have been a minimum of three (3) separate transfers of beneficial interest of the note prior to the closing date. There cannot be documented a single of these transfers in the Public Records Office of Los Angeles County, California prior to the closing date of the Citigroup Trust.

86.     The original Deed of Trust shows that Accredited Home Lenders originated the transaction. Accredited Home Lenders would have then sold the note to Citigroup Global Markets Realty Corp., the sponsor of the Citigroup Trust, which would have been the first transfer. Citigroup Global Markets Realty Corp., as sponsor of the Citigroup Trust, would have then sold the note to the depositor, Citigroup Mortgage Loan Trust Inc., which would have been the second transfer. Citigroup Mortgage Loan Trust Inc., would then have assigned the note to U.S. Bank, trustee for the Citigroup Trust, for the benefit of the certificate holders, which would have been the third transfer.

87.     On information and belief, Accredited Home Lenders was the "correspondent lender" that originated the Plaintiffs' mortgage loan, which in turn was sold and attempted to be transferred into the Citigroup Trust, the securitization trust.

88.     The promissory note and the Deed of Trust have taken two distinctly different paths. The loan was originally made by Accredited Home Lenders and there was an attempt to securitize the note into the Citigroup Trust. Beyond the previously referenced two assignments, there no record of any prior assignments by the originator, sponsor, or the depositor prior to the closing dated specified in the Citigroup Trust agreement, thus breaking the chain of endorsements.

89.     In Carpenter v. Longan, 16 Wall 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S.

Supreme Court stated:

> "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."

90.     On information and belief, the Plaintiffs' Deed of Trust and note became split during the securitization process as a result of untimely assignments of either the Deed of Trust, or both.

91.     Especially noteworthy is the fact that Assignment of Deed of Trust #1 and Assignment of Deed of Trust #2 were recorded in "reverse order" as evidence by the County Records' Instrument numbering sequence displayed on both assignments. The first was 20120559400, which Town Capital I, LLC assigns beneficial interest to Double F Management Coup, LLC. The second was 20120559401 which MERS assigns beneficial interest to Town Capital I, LLC. Town Capital I, LLC cannot assign beneficial interest in the note prior to having obtaining beneficial interest first.

92.     Assignment of Deed of Trust #2 was executed by Brett Behrens as Assistant Secretary of MERS. Brett Behrens is employed by FCI and not MERS.

93.     In addition, there is no Substitution of Trustee recorded for the subject property. Yet, on April 11, 2012, document number 20120542628 Notice of Default and Election to Sell under Deed of Trust was filed in the Official Records of Los Angeles County, California. This document properly identified the amount of the mortgage loan the Plaintiffs obtained on July 6, 2007, recorded July 16, 2007. This was recorded by FCI. The original trustee appointed in the original Deed of Trust is Stewart Title Guaranty, whose authority remains in force until or unless said Trustee's authority is subsisted with a successor trustee. FCI had no standing to commence foreclosure action against the subject property prior to be empowered to do so.

94.     Plaintiffs have always maintained and continue to maintain that they were never in default on the Loan provided to them and that they have made each and every monthly mortgage

payment on time.

95.     The party with beneficial interest in the note is the one with the power to execute the assignments of Deed of Trust and the Substitution of Trustee.

96.     U.S. Bank is acting as the trustee for the mortgage-backed securitized trust, Citigroup Trust, under the note.  U.S. Bank is the entity empowered to make said execution above.

97.     The facts herein seem to demonstrate that FCI was acting as it if held both factual beneficial interest in the note, and the power of sale contained in the Deed of Trust.  The note traveled and was sold over and over again to multiple entities without keeping the two estates of the note and Deed of Trust united in vesting with each sale or assignment of the note.

98.     On information and belief, the chain of endorsements for the promissory note after the loan was funded and recorded in favor of Accredited Home Lenders was broken.  As a result, the proof of claim to the  Note's beneficial interested is un-perfected.

99.     Neither FCI nor Double F were the original lenders under the subject deed or the original holders of the note secured by the deed.

100.    Neither FCI nor Double F was the original servicers of the subject loan.

101.    The Deed of Trust denominates Accredited Home Lenders as the "lender".

102.    The Deed of Trust denominates MERS as the "beneficiary".

103.    The Deed of Trust does not denominate U.S. Bank, FCI, Double F or Town Capital.

104.    The Plaintiffs have no idea who currently owns the loan.

105.    On information and belief, bogus and fraudulent assignments exist that have been executed by employees of a mortgage default solutions company, as officers of MERS, as nominee for Accredited Home Lenders.

106.    On information and belief, bogus and fraudulent assignments exist that have been executed by employees of a mortgage default solutions company, which assignments purport to transfer the

beneficial interest in the mortgage, along with the note thereby secured.

107.  On information and belief, bogus and fraudulent assignments exist that have been executed by MERS, as nominee for Accredited Home Lenders, which assignments purport to transfer the beneficial interest in the mortgage, along with the note thereby secured.

108.  In view of the preceding, all assignments of the Deed of Trust executed after the trust's closing date would be a void act for the reason that it violated the express terms of the trust instrument.

109.  MERS never had an interest in the Deed of Trust or the note.

110.  The note does not name MERS.

111.  MERS never had authority from Accredited Home Lenders to transfer their interest in the note to anyone.

112.  The foreclosure action by FCI is in direct conflict with the preceding information.  The note could not have been in the possession of MERS, FCI, Double F or Town Capital and be in the Citigroup Trust at the time of foreclosure.

113.  Generally, if the Deed of Trust and the note are not together with the same entity, there can be no legal enforcement of the Note.  The Deed of Trust enforces the Note, and provides the capability for the lender to foreclose on the property.  Thus, if the note and the Deed of Trust are separated, foreclosure legally cannot occur.  The note cannot be enforced by the Deed of Trust if each contains a different mortgagee/ beneficiary; and if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowner's property.

114.  No entity can be a creditor if they do not hold/own the asset in question, such as the note and/or the property; and a trust, such as the Citigroup Trust, cannot hold assets, for if they do, their tax exempt status is violated and the trust itself is void ab initio.  Therefore, here, the Citigroup Trust has either voided its intended tax-free status, or the asset is not in fact owned by

it.

115.   Since the loan was sold, pooled and turned into a security, FCI or Double F, can no longer claim that it is a real party of interest, as the original lender has been paid in full.

116.   Moreover, once the note was securitized and converted into a stock, or stock equivalent, it is no longer a note.   If both the note and the stock, or stock equivalent, exist at the same time that is known as double dipping and double dipping is a form of securities fraud.

117.   Once a loan has been securitized, which the subject loan has been, it forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Deed of Trust is forever lost.

118.   The note has been converted into a stock as a permanent fixture.   It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements and pooling and servicing agreements.   There is no evidence on record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the note, such that the note and the Deed of Trust have been irrevocably separated, thus making a nullity out of the purported security in a property.

119.   Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law.

120.   There are questions of law and fact, including but not limited to the following: the nature, scope and operation of Defendants' obligations to homeowners under the promissory note and Deed of Trust, whether the failure of Defendants to provide information of the ownership of the loan amounts to a breach of contract and/or breach of covenant of good faith and fair dealing; whether the failure of Defendants to provide appropriate documents and disclosures amounts to a breach of Truth In Lending Act and/or Real Estate Settlement and Procedures Act; whether the failure of Defendants to do their due diligence and provide accurate data on the Uniform

Residential Loan Application amounts to a breach of unfair business practices and fraud and/or negligent lending; and whether the Court can order damages.

121. Plaintiffs believe that Defendants have breached their duty as fiduciary in the agency relationship in that they have acted in a manner that puts their own profits and benefits ahead of its principals. In doing so, Plaintiffs have been harmed by this breach of contract, breach of covenant of good faith and fair dealing, breach of Truth in Lending Act and Real Estate Settlement and Procedures Act; and breach of fiduciary duty, and are entitled to damages.

## FIRST CAUSE OF ACTION:
## DECLARATORY RELIEF TO DETERMINE AN INTEREST IN PROPERTY
## (AS AGAINST ALL DEFENDANTS)

122. Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

123. California Code of Civil Procedures §1060 governs declaratory relief. It states the following:

> "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

124. Plaintiffs seek declaratory relief determining the legal rights and duties of Defendants, pursuant to the Deed of Trust, the note, and other documentary evidence that will be presented to the Court prior to trial, including also a declaration that none of the Defendants has the right to

18
**VERIFIED COMPLAINT**

1 proceed with a foreclosure sale of the subject property.

2 125.   In addition, Plaintiffs seek to determine and establish who is the true owner and real party in interest in the subject loan; determine the amount owed to said true owner and real party in interest in the subject loan and to determine and reform the obligation as is necessary related to any defects in the securitization process violated by the Defendants.

126.   Plaintiffs seek to determine if the Defendants have bifurcated and/or caused a serious defect between the security interest and obligation requiring the Court to reform and correct said bifurcation and/or defect.

127.   Plaintiffs allege that the security interest recorded on the subject property has been bifurcated from the underlying obligation and subject to several defects in title.  The underlying obligation/contract in the form of a promissory note has been since its inception been endorsed and/or transferred to other parties while not assigning the interest in the security instrument (Deed of Trust).

128.   This bifurcation was done for the purpose of defrauding local county recorders of statutorily required recording fees and to circumvent the century plus system of recordation and giving notice.  In this process of fraud and circumvention, Plaintiffs contend that they impaled their security interest by bifurcating it from the underlying obligation.

129.   Generally, the law has been that the security instrument follows the obligation[2] however, the creators of the contract themselves specifically intended to bifurcate the note from the security instrument and therefore Civil Code §2936 is not applicable to the specific and intentional acts of the note holder and holders of the security instrument.

130.   Based on the actions of the holders of the obligation and the separate action of the holders

---

[2] California Civil Code §2936: The assignment of a debt secured by mortgage carries with it the security.

of the security instrument, Plaintiffs hold an interest in the property free and clear of any interest of Defendants, and DOES 1-10, in that the lien evidenced by the Deed of Trust on Plaintiffs' property has no value because it is wholly unsecured, and thus, the deed is null and void.

131.   Plaintiffs dispute the contention that the deed cannot be determined to be null and void because it is secured by the subject property.

132.   An actual controversy exists between Plaintiffs and Defendants with regard to the status of the claim as secured or unsecured.

133.   Plaintiffs are disputing the right of Defendants to exercise the remedy of foreclosure, pending at this time, afforded under state law.

134.   A determination by this Court that that remedy is unavailable to Defendants is both necessary and proper at this time.

135.   It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the nature, extent and validity of the lien, including whether the lien Defendants assert against the subject property is secure or unsecured or only partially secured.

136.   Plaintiffs hereby request that the Court issue a declaration, that the subject loan agreement (note), is void and unenforceable, based on a finding by the Court as a question of law, that the loan was void from inception based on illegality, unconscionability and as a violation of express public policy and is unenforceable against the Plaintiffs, and to either cancel the contract or to reform the contract to remove the offending terms of the contract and reinstate the same.

## SECOND CAUSE OF ACTION:
## ACTUAL FRAUD (CAL. CIV CODE §1572)
## (AS AGAINST ACCREDITED HOME LENDERS)

137.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

138.   Defendant intentionally, willfully and wantonly engaged in the acts with a purpose of deceiving Plaintiffs and inducing them to part with their personal and real property by using a false stated income for approval on their loan.

139.   Plaintiffs allege that Accredited Home Lenders intended to and did, deceive Plaintiffs into entering into the predatory loan (excessive closing costs and lack of qualification) constituting fraud and fraudulent underwriting practices, in breach of Calif. Fin. Code §§50204(g) and (k): "A licensee may not do any of the following: ... (g) Engage in fraudulent home mortgage underwriting practices ... (k) do an act ... that constitutes fraud or dishonest dealings." Plaintiffs further alleges that they were deceived by the false representations made by Accredited Home Lenders upon which he relied to his detriment by agreeing to the loan without the full benefit of all the relevant facts and upon the assurances of Accredited Home Lenders through its interviewer and loan officer, that the Plaintiffs would be able to afford the loan and by its failure to disclose certain material information, including the total amount of the loan payment with taxes and insurance and whether their income would be sufficient to afford those payments.

140.   The Uniform Loan Application was altered by the loan officer and interviewer in order to qualify Plaintiffs for the loan.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de factor fraud.

141.   Defendant engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-servicing purposes and financial gain, which in justice ought to be made known.

142.   These loans were fraudulent because Accredited Home Lenders did not perform due diligence by confirming the borrower's ability to make the monthly payments over the lifetime on the loan.

143.   Fraud in the Factum is a type of fraud where misrepresentation causes one to enter a

transaction without accurately realizing the risks, duties, or obligation incurred. This occurs when the maker or drawer of a negotiable instrument, such as a promissory note or check, is induced to sign the instrument without a reasonable opportunity to learn of its fraudulent character or essential terms. Determination of whether an act constitutes fraud in the factum depends upon consideration of "all relevant factors." Fraud in the factum voids the instrument under state law and is a real defense against even a holder in due course.

144. Plaintiffs were induced to sign the instrument without a reasonable opportunity to learn of its fraudulent character or essential terms.

145. Although Plaintiffs' loan was coupled with fraud at the origination stage, which among other things, set up Plaintiffs for likely default, Plaintiffs have maintained each and every payment as they became due and has avoided defaulting on the loan.

146. As a direct and foreseeable consequence of the fraudulent acts of Defendant, Plaintiffs have been caused to suffer damage to their credit rating, mental and emotional distress, the potential loss of their home and equity, and economic damages. In addition, the acts of the Defendant are alleged to have been intentional and committed with a conscious disregard for the consequences or to the damages that the Plaintiffs likely would suffer as a consequence of their actions. Punitive damages are therefore appropriate to punish the acts and to deter such conduct by others.

147. Plaintiffs are entitled to exemplary and punitive damages for Defendant's fraudulent conduct. Further, fraudulent concealment avoids the contract.

### THIRD CAUSE OF ACTION:
### NEGLIGENT LENDING
### (AS AGAINST ACCREDITED HOME LENDERS)

148. Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

149. Accompanying every contract is a common-law duty to perform with care, skill and reasonable expedience one's contractual duties. A negligent failure to perform such duties is a tort as well as a breach of contract. In addition, a lender owes the same duty of care as any other person not to cause an unreasonable risk of injury to the person or property of another. This duty of care extends to borrowers and prospective borrowers. A lender may be liable, for example, if it fails to exercise due care in the processing of a loan application.

150. Plaintiffs allege that Accredited Home Lenders breached its duties to the Plaintiffs by failing to use proper care and skill in the loan application and approval process by not verifying Plaintiffs' income and Plaintiffs' ability to pay the subject mortgage that should never have been made based on Plaintiffs' actual income. In this instance, the Defendant placed its own financial interests above its duties to properly verify the information contained in the loan application by means of reasonable underwriting guidelines, including Plaintiffs' ability to repay the loan on a consistent basis.

151. As a direct and proximate result of Accredited Home Lender's actions, Plaintiffs have been caused to suffer actual and consequential damages, including the threatened forfeiture of his property, the loss of future equity and severe emotional distress and trauma and damage to his credit.

### FOURTH CAUSE OF ACTION:
### DECEIT – FRAUDULENT CONCEALMENT (Cal Civ. Code §1709)
### (AS AGAINST ALL DEFENDANTS)

152. Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

153. Defendants are actively concealing the existence or lack thereof of any proof of ownership towards the subject property and the loan.

154.   The concealment of the true facts from the Plaintiffs have been done with the intent to proceed to foreclosure without having provided all notices as required under the law and with full knowledge that they had failed to provide ownership and the property documentation.

155.   The concealment by Defendants has been a substantial factor in causing the harm suffered by Plaintiffs.

156.   These actions by Defendants are wanton, malicious, and done with a conscious disregard for the rights of the Plaintiffs or otherwise with intent to cause the Plaintiffs harm, specifically to cause them to lose their home.

157.   As a result of the concealment, the Plaintiffs have suffered damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION:
### NEGLIGENCE
### (AS AGAINST FCI AND DOUBLE F)

158.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

159.   Plaintiffs are not aware as to which entity currently services the loan.  Defendants FCI and Double F, at one time serviced the loan, and one of the Defendants is still the current servicer of the loan.

160.   The Defendant acting as Plaintiffs' servicer has a duty to exercise reasonable care and skill to maintain property and accurate loan records and to discharge and fulfill the other tasks to the maintaining, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiffs the status of any foreclosure actions taken by it, refraining from taking any action against Plaintiffs that it did not have the legal authority to do, and providing all relevant information regarding the loan Defendant had with the Plaintiffs.

161.   In taking the actions alleged above, and in failing to take the actions as alleged above,

Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loan by, among other things, preparing and recording documents without having the legal authority and/or proper documentation to do so.

162.   The breach is a direct cause of harm to the Plaintiffs.

163.   As a direct, legal and proximate result of Defendants' acts and omissions, the Plaintiffs have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION:
## BREACH OF CONTRACT
## (AS AGAINST ACCREDITED HOME LENDERS, MERS, U.S. BANK AND TOWN CAPITAL)

164.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

165.   Plaintiffs allege that the note and Deed of Trust constitute a contractual agreement between Plaintiffs as borrowers and Accredited Home Lenders as lender and MERS as beneficiary.  Thus, Defendants had a duty to Plaintiffs to perform under the original Deed of Trust.

166.   Plaintiffs allege that Accredited Home Lenders and MERS breached the loan agreement by securitizing the loan, bundling it with other loans, selling the same as an investment to third party investors, U.S. Bank, Town Capital, and others who are not disclosed nor otherwise known or knowable to Plaintiff.

167.   Plaintiffs allege that by transferring/selling/assigning the note without the Deed of Trust, Accredited Home Lenders breached the contractual agreement.

168.   At the time that Defendants breached its agreement, Plaintiffs had performed their duties under the contract.  Plaintiffs have been making regular on-time payments under the loan and thus had performed and continued to perform despite the breach of Defendants.

169.   The breach is the direct and proximate cause of Plaintiffs' damages.  Plaintiffs have

**VERIFIED COMPLAINT**

suffered substantial monetary damages and lost equity in his home. Defendants have been unjustly enriched as they continued receiving mortgage payments despite having sold the note to investors shortly after the execution of the note and Deed of Trust.

170. Plaintiffs allege that Defendants are liable for damages resulting from breach in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION:
## BREACH OF GOOD FAITH AND FAIR DEALING
## (AS AGAINST ALL DEFENDANTS)

171. Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

172. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

173. The terms of the loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

174. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

175. Defendants breached their duty by attempting to exercise the power of sale in the Deed of Trust when they had no legal authority to do so.

176. Plaintiffs allege that Defendants breached its covenant by selling/transferring Plaintiffs'

1  loan to U.S. Bank and continuing to collect mortgage payments when it has in fact been paid in

2  full.

3  177.   Plaintiffs allege that none of the Defendants have a perfect interest in the property and any

4  attempt to foreclose upon it is illegal and fraudulent.

5

6  178.   Plaintiffs further allege that Defendants willfully breached its implied covenant of good

7  faith and fair dealing with Plaintiff when Defendants:

8       a.  Willfully withheld numerous disclosures;

9       b.  Willfully withheld notices in regard to excessive fees and closing costs; below

10          standard and non-diligent underwriting standards, Good Faith Estimates, Yield

11

12          Spread Premiums, and failure to disclose when negative credit scores were

13          disseminated;

14       c.  Willfully placed Plaintiffs in a loan that Plaintiffs did not quality for, could not

15          afford, and subjected Plaintiffs to further financial detriment, while providing

16          Defendants with financial benefits it would not have otherwise enjoyed.

17  179.   As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury which

18  has caused Plaintiffs the threat of losing their home.  Plaintiffs have incurred and continue to

19  incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

20

21  180.   Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and

22  oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish

23  Defendants and to deter others from engaging in the same behavior.

24

25  ### EIGHTH CAUSE OF ACTION:
**VIOLATION OF 15 U.S.C. §1641(g) – TRUTH IN LENDING ACT ("TILA")**
**(AS AGAINST U.S. BANK)**

26

27  181.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of

28  this complaint, as though fully set forth herein.

182.   The Truth in Lending Act ("TILA") applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes.

183.   The new subsection (g) added to §131 of TILA by §404 of the Helping Families Save Their Homes Act of 2009 provides:

> (g) NOTICE OF NEW CREDITOR-
>
> IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-
>
> > (A) the identity, address, telephone number of the new creditor;
> > (B) the date of transfer;
> > (C) how to reach an agent or party having authority to act on
> > (D) behalf of the new creditor;
> > (E) the location of the place where transfer of ownership of the
> > (F) debt is recorded; and
> > (G) any other relevant information regarding the new creditor.
>
> Failure to comply with the requirements of this new subsection 131(g) of TILA may result in civil liability for actual damages, legal fees, and statutory damages under §130(a) of TILA.

184.   Plaintiffs are informed and believe, and thereon alleges, that U.S. Bank as Trustee for the Citigroup Trust was assigned the loan by Accredited Home Lenders.

185.   Thus, §131(g) of TILA applies to U.S. Bank as the purported alleged assignee of Plaintiffs' note.

186.   U.S. Bank failed to notify Plaintiff within thirty (3) days after the date on which it was allegedly assigned the Deed of Trust.

187.   Plaintiffs did not receive notice as required under §131(g) of TILA.

188.   Defendant failed to issue valid TILA notices and disclosures as mandated.  The failure to provide these disclosures and notices result in the Plaintiffs suffering monetary damages and incurring attorney's fees.

189.   As a direct and proximate result of Defendant's violations, Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

190.   Defendant's actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendant and to deter others from engaging in the same behavior.

**NINTH CAUSE OF ACTION:**
**VIOLATION OF 24 C.F.R. §3500.14 – REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")**
**(AS AGAINST ACCREDITED HOME LENDERS)**

191.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

192.   Real Estate Settlement Procedures Act ("RESPA") applies because a lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one-to-four family residential property are subject to RESPA per 12 U.S.C. §§2601-2617.

193.   Housing and Urban Development's 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

   a.   Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

   b.   Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

194.   In applying this test, Housing and Urban Development (HUD) believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities,

29
**VERIFIED COMPLAINT**

1  or services furnished or performed to determine whether it is legal under RESPA.

2  195.   Fees were charged in excess of the reasonable value of goods provided and/or services

3  rendered.  These excessive fees included but were not limited to the closing costs of the loan.

4  196.   Further, the loan also contained excessive closing costs and fees including a Yield Spread

5  Premium.  Defendant did give, provide or receive a hidden fee or thing of value for the referral of

6

7  settlement business, including, but not limited to, kickbacks, hidden referral fees, and/or Yield

8  Spread Premiums.  This is a violation under RESPA of 24 C.F.R. §3500.14.

9  197.   As a proximate result of Defendant's actions, Plaintiffs have been damaged in an amount

10  not yet ascertained but to be proven at trial.

11  198.   Defendant's actions in this matter have been willful, knowing, malicious, fraudulent and

12  oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendant

13

14  and to deter others from engaging in the same behavior.

15  **TENTH CAUSE OF ACTION:**
   **BREACH OF FIDUCIARY DUTY**
16  **(AS AGAINST ALL DEFENDANTS)**

17  199.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of

18  this complaint, as though fully set forth herein.

19  200.   Defendants owed a fiduciary duty to Plaintiffs and breached that duty by failing to advise

20

21  or notify Plaintiffs when Defendants' broker knew or should have known that Plaintiffs may not

22  have been qualified for the loan amount he was provided with.

23  201.   The loan was in the best interest of the Defendants, as it led to a maximization of profits

24  for the Defendants, with no concern for the borrower.  A different program or type of loan would

25  have netted less return for the lender, through better for the borrower.

26  202.   Defendants failed to provide material disclosures regarding the loan and its interest rate to

27  Plaintiff.

28

203.   Defendants failed to fully comply with TILA and RESPA regulations and laws designated to protect Plaintiffs.  The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of his home.  Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

204.   Plaintiffs will suffer additional harm in facing an imminent foreclosure against their home.

## ELEVENTH CAUSE OF ACTION:
## UNCONSCIONABILITY
## (AS AGAINST ALL DEFENDANTS)

205.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

206.   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

207.   When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

208.   Commentary to §208 of the Restatement (Second) of contract states as follows: "… gross inequity of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.  Factors which may contribute to a finding of unconscionability in the bargaining process include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial

31
**VERIFIED COMPLAINT**

benefits from the contract; knowledge of the stronger party that the weaker party is unable to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement or similar factors."   Like illegality and public policy claims, the issue of unconscionability is a question of law (Flores v. Transamerica HomeFirst, Inc. (2001) 93 CA4th 846, 851.

209.   Here, Defendants knew that the Plaintiffs would not be able to afford the mortgage payments on the loan upon assumption of the loan and the adjustment in payments, as the payments far exceeded Plaintiffs' actual income. Defendants breached the loan agreement by enforcing an objectively unconscionable contract resulting in the threatened eviction from the home and the ruination of his credit without any attempt to voluntarily modify the terms of the loan.   Such conduct was shocking and unconscionable, as the Defendants unfairly and unreasonably profited from the high interest and fees of the loan terms and the inability of the Plaintiffs to understand the terms due to the highly technical nature of the loan terms that were never explained to him.

210.   Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow; coupled with the windfall that the Defendants reaped financially from its predatory practices upon Plaintiffs, the court may find that the promissory note and Deed of Trust are unconscionable and of no force or effect.

### TWELFTH CAUSE OF ACTION:
### QUIET TITLE
### (AS AGAINST ALL DEFENDANTS WHO CLAIM AN INTEREST IN THE PROPERTY KNOWN AS 22039 SUNRISE VIEW PLACE, SANTA CLARITA, CA 91390

211.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

212.   Plaintiffs are in possession of 22039 Sunrise View Place, Santa Clarita, California 91390, and is entitled to ownership and title to that property.

213.   Defendants known or unknown who claim an interest in the property are without any right whatsoever and they no have legal or equitable right, claim or interest in the property.

214.   Plaintiffs seek a declaration that the title to the subject property is reverted to Plaintiffs alone, and that the Defendants be declared to have no estate, right, title or interest in the subject property except as to the party the Court determines and in an amount determined by the Court.

215.   Plaintiffs also seek a declaration that the Defendants be forever enjoined in the future from asserting any estate, right, title or interest in the subject property adverse to Plaintiffs except as allowed by this Court.

## THIRTEENTH CAUSE OF ACTION:
## VIOLATION OF BUSINESS & PROFESSIONS CODE §17200
## (AS AGAINST ALL DEFENDANTS)

216.   Plaintiffs re-allege and incorporate the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

217.   The Court has jurisdiction over this action pursuant to Business and Professions Code §§ 17200 et seq., specifically Business and Professions Code §17203, which provides any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Business and Professions Code §17204, which provides for actions for any relief pursuant to the Unfair Competition Law to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association or by

1    any person acting for the interests of itself, its members or the general public.

2    218.   The unfair business practices of the Defendants are outside the scope of any federal

3    preemption as the Supreme Court has ruled in "Federally chartered banks are subject to state laws

4    of general application in their daily business to the extent such laws do not conflict with the letter

5    or the general purposes of the [National Bank Act]." See <u>Watters v. Wachovia Bank, N.A.</u> 550

6

7    U.S. 1 (2007).

8    219.   Plaintiffs allege that Defendants engaged in deceptive business practices as defined in the

9    Code section above and in section 17500 by making untrue or misleading statements regarding

10    the amount of the Plaintiffs' income, attaching bogus fees and closing costs and charging

11    excessive interest rates. Defendants engaged in deceptive business practices by fraudulently

12

13    recommending, offering, marketing, accepting, purchasing, assigning and or collecting on a

14    debt/mortgage that it knew or should have known was void and therefore unenforceable given the

15    illegal nature of the contract/ See Calif. Fin. Code §22302, referring to Cal. Civ. Code §1670.5.

16    220.   The acts of the Defendants above constitute unfair business practices and/or acts, as

17    defined in California Business and Professions Code §§17200 and 17500, as the acts were in

18    violation of California statutory law, Civil Code §§1667 (as the acts were illegal, i.e., failure to

19

20    properly qualify, in violation of Cal. Fin. Code §4973), 1708 (as the acts were injurious to the

21    Plaintiffs and to the public at large, in that they were designed to cause a certain or likely default),

22    1709 (as Plaintiffs were willfully induced to change his financial positions to his detriment

23    through the counterfeit loan), 1710 (as Plaintiffs were deceived by the suppression of their ability

24    to afford the loan throughout its term), 1770(19) (as all the loan agreements contained

25    unconscionable terms, such as the pre-payment penalty), Cal. Fin. Code §§22327, 22317.5(b),

26

27    4973, et seq., and 50204 (as Defendants failed to properly qualify Plaintiffs for the loan payments

28    and set them up for certain or likely default), and were also in violation of established California

1   public policies to promote and preserve home ownership and to prevent foreclosures (Civ. Code

2   §§1695(b), 2923.5 and 3412).

3   221.   Although the acts of Defendants were fraudulent based on the above allegations, Plaintiffs

4   have gone above and beyond their requirements to ensure that they does not default on the Loan.

5   In fact, Plaintiffs have always maintained and continue to maintain that they never defaulted on

6   the loan and made each and every mortgage payment as they became due.

7   222.   Further, Plaintiffs allege that Defendants engaged in fraudulent underwriting practices by

8   ratifying the falsifying of the Plaintiffs' loan application, designed to deceive Plaintiffs with

9   respect to the loan and to their obligations and liabilities under the loan and Civil Code §§1550(3)

10   and 1596 in that this transaction was not lawful, as it was in violation of numerous California

11   statutes as cited herein (§1708 in that the loan agreement has caused injury to Plaintiffs by

12   destroying their credit rating, §1709 in that Plaintiffs were wrongfully and willfully deceived into

13   changing their position to their financial detriment) and in violation of California public policies

14   to protect the public from deceitful conduct (see Civ. Code §1711).

15   223.   Plaintiffs allege that the acts were also oppressive and substantially injurious to consumers,

16   such as the Plaintiffs, in that they were committed with the intent and/or knowledge that the

17   commission of the acts would result in the forfeiture of the Plaintiffs' home and equity.   The acts

18   of Defendants, in furtherance of the fraudulent and deceitful corporate polices of its principal,

19   were in violation of this Code section, as misleading and injurious to the Plaintiffs.

20   224.   Defendants failed to undergo a diligent underwriting process for this loan.   Defendants also

21   failed to properly adjust and disclose facts and circumstances relating to Plaintiffs' mortgage loan

22   and placed Plaintiff in a loan, by way of stated income and misleading facts, which he should

23   never have been approved for because they could not afford it.   Defendants did have that

24   knowledge of these facts, circumstances and risks but failed to disclose them.

225.   Defendants also used various rates and charges to disguise the actual payment schedule and loaned amount.   Defendants enjoyed unjust enrichment and has profited and deceptively preyed upon Plaintiffs and their naïve nature in the industry.

226.   By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, Defendants have violated California Business and Professions Code §§ 17200 et seq. by consummating an unlawful, unfair and fraudulent business practice, designed to deprive Plaintiff of his home, equity, as well as his past and future investment.

227.   By reason of the foregoing, Plaintiffs have suffered and continue to suffer damages in a sum which is, as yet unascertained.

228.   The totality of these actions by Defendants constitutes an unfair business practice on the citizens of California and more specifically on the Plaintiffs herein.

229.   As a direct and proximate cause of the acts of the named Defendants, Plaintiffs have suffered the threatened forfeiture of their home, damage to his credit, emotional distress, and consequential damages in an amount to be fully determined at time of trial, but in an amount exceeding $1,000,000.00 to date, and is entitled to all statutory damages as provided by California law.

### FOURTEENTH CAUSE OF ACTION:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS AGAINST ALL DEFENDANTS)

233.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

234.   The actions of Defendants, as set forth herein, have resulted in the Franklins' necessity to file for Bankruptcy in order to protect them from illegally losing possession of their home.

235.   This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous and reckless conduct.

236. The Franklins allege and believe that they were in contact with numerous times with Jason Tolman, an agent for Defendant FCI. The Franklins were in contact with Mr. Tolman in order to inquire as to what FCI was doing in regards with selling the Franklins' home.

237. The Franklins allege that Mr. Tolman informed them that their Home was currently valued at $435,000 and as such, the Franklins were upside down in relation to the mortgage payments on the Home.

238. Although FCI's agent clearly represented to the Franklins that their Home was valued at $435,000.00, they are attempting to sell the Home for $524,015.99 during the upcoming October Trustee Sale.

239. Not only did Defendants make these malicious misrepresentations to the Franklins, but they also intentionally, knowingly and recklessly misrepresented to the Franklins that the named Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable or actual beneficial interest whatsoever in the Franklins' Home.

240. Defendants' conduct- fraudulently foreclosing on a property in which they have no right, title, or interest is so outrageous and extreme that it exceeds all bounds of decency which is usually tolerated in a civilized community.

241. Having to lose one's home based on fraudulent and unlawful acts perpetrated by huge multi-billion dollar companies will undoubtedly have a significant detrimental impact on one's mental, emotional and physical health.

242. This conduct by Defendants was undertaken with the specific intent of inflicting emotional distress on the Franklins, such that they would be so emotionally distressed and debilitated that they would be unable to exercise their legal rights: their right to title of their home, their right to cure the alleged default, their right to verify the alleged debt that Defendants were attempting to

1 | collect, and their right to clear title to the Property such that said title will regain its marketability

2 | and value.

3 | 243.  Defendants were attempting to collect on a debt to which they have no legal. Equitable or

4 | pecuniary interest in.  Defendants fraudulently foreclosed on the Home despite having no

5 | monetary or pecuniary interest in said Home.  This type of conduct is clearly outrageous.

6 |

7 | 244.  At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not

8 | acting in good faith while attempting to collect on the subject debt.  Defendants, and each of them,

9 | committed the acts set forth above with complete, utter and reckless disregard of the probability of

10 | causing Homeowners to suffer severe emotional distress.

11 | 245.  As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on the

12 | home, the Franklins have suffered severe emotional distress, including but not limited to lack of

13 | sleep, anxiety and depression.

14 |

15 | 246.  Plaintiffs did not default in the manner stated in the Notice of Default, yet because

16 | Defendants' outrageous conduct, Plaintiffs have been living under the constant emotional

17 | nightmare of losing their home and becoming homeless.

18 | 247.  As a proximate cause of Defendants' conduct, Plaintiffs have experienced loss of sleep,

19 | severe depression, lack of appetite, and loss of productivity at their place of employment.

20 |

21 | 248.  The conduct of Defendants, and each of them, as herein described, was so vile, base,

22 | contemptible, miserable and loathsome that it would be looked down upon and despised by

23 | ordinary people.  Plaintiffs are therefore entitled to punitive damages in an amount appropriate to

24 | punish Defendants and to deter others from engaging in similar conduct.

## JURY TRIAL

230.   Plaintiff demands a jury trial of all triable issues of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1. Enter a judgment declaring the acts and practices of Defendants complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing;

2. Order specific performance of the contractual obligations of Defendants, together with other relief required by contract and law;

3. Award actual and punitive damages to Plaintiffs in an amount to be determine by proof at trial;

4. Award compensatory and special damages to Plaintiffs in an amount to be determined by proof at trial;

5. Award the Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

6. Any prejudgment or other interest according to law; and

7. Grant such other and further relief as this Court finds necessary and proper.

Dated: 9/18/2012, 2012                    LAW OFFICES OF PATRICIA RODRIGUEZ


_____

Patricia Rodriguez, Esq.
Attorney for Plaintiffs
Robert Franklin; Debbie Franklin

1

## VERIFICATION

2

3  I, ROBERT FRANKLIN, am the Plaintiff in this action. I am informed and believe and on

4  that ground allege that matters stated herein are true.

5  I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

6  Executed on _9-20-12_ in _LOS ANGELES_, California.

7

8

9  _ROBERT FRANKLIN_

10

11  I, DEBBIE FRANKLIN, am the Plaintiff in this action. I am informed and believe and on that

12  ground allege that matters stated herein are true.

13  I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.

15  Executed on _9-20-12_ in _LOS ANGELES_, California.

16

17

18  _DEBBIE FRANKLIN_

19

20

21

22

23

24

25

26

27

28

40
ADVERSARY COMPLAINT

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ROBERT FRANKLIN

DEBBIE FRANKLIN

**DEFENDANTS**
Accredited Home Lenders, Inc.; U.S. Bank National Association; FCI Lender Services, Inc.; Town Capital I, LLC.; Double F Management Group, LLC.; Mortgage Electronic Registration Systems, Inc., Does 1-10

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
LAW OFFICES OF PATRICA RODRIGUEZ/Patricia Rodriguez (270639)
739 E. Walnut St; #204; Pasadena, CA. 91101
Ph 626-282-0500/Fax 626-282-0522/Email: sevag@attorneyprod.com

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** To be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of 15 U.S.C. Section 1641 (g) and Violation of 24 C.F.R. section 3500.14

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☑ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV12-8252**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                       ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                       ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                       ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date 9/21/2012

    **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                            *CIVIL COVER SHEET*                       

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 8252 SJO (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| ROBERT FRANKLIN;<br>DEBBIE FRANKLIN | ) )<br>) )<br>) ) |
| *Plaintiff(s)*   See Attached | ) ) |
| v. | )   Civil Action No. **CV12-8252**-SJO |
| Accredited Home Lenders, Inc.; US Bank, N.A.; FCI<br>Lender Services, Inc.; Town Capital I, LLC.; Double F<br>Management Group, LLC.; Mortgage Electronic<br>Registration Systems; Does 1-10 | )<br>)<br>)<br>) )<br>) ) |
| *Defendant(s)* | ) |

**FOR OFFICE USE ONLY** (stamped) (MCWx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* (1) Accredited Home Lenders, Inc. -(James Ransom) Mira Messa Blvd, #100; San Diego, CA. 92131; (2) US Bank, N.A.-720 E. Colorado Blvd., Pasadena, CA. 91101; (3) Fci Lender Services, Inc. (Michael W. Griffith) 8180 E. Kaiser Blvd., Anaheim Hills, CA. 92808; (4) Double F Management Group (James Feller) 5071 Eagleton Wy., Granite Bay, CA. 95746; (5) MERS-15420 Laguna Canyon Rd., Suite 100, Irvine, CA. 92618; (7) Town Capital I-(Not listed).

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    LAW OFFICES OF PATRICIA RODRIGUEZ
Patricia Rodriguez (270639)
739 E. Walnut St. #204
Pasadena, CA. 91101
prod@attorneyprod.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

MARILYN DAVIS

Date: SEP 2 5 2012                                                   _____
                                                                      *Signature of Clerk or Deputy Clerk*

**FOR OFFICE USE ONLY** (stamped)

1  PATRICIA RODRIGUEZ, ESQ. Bar No. 270639
   LAW OFFICES OF PATRICIA RODRIGUEZ
2  739 E. Walnut Street, Suite 204
   Pasadena, California 91101
3  Telephone:  626-282-0500
   Fax: 626-282-0522
4
5  Attorney for Plaintiffs,
   ROBERT FRANKLIN
6  DEBBIE FRANKLIN
7
8              UNITED STATES

9  CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

10

11                                    Case No.:

12 ROBERT FRANKLIN, an individual;     **VERIFIED COMPLAINT:**
   DEBBIE FRANKLIN, an individual
13                                      1.  **DECLARATORY RELIEF**

14              Plaintiffs,             2.  **ACTUAL FRAUD**

15 vs.                                  3.  **NEGLIGENT LENDING**

16 ACCREDITED HOME LENDERS, INC, a     4.  **DECEIT – FRAUDULENT CONCEALMENT**
   Business Entity; U.S. BANK NATIONAL
17 ASSOCIATION, a Business Entity; FCI  5.  **NEGLIGENCE**
   LENDER SERVICES, INC, a Business
18 Entity; TOWN CAPITAL I, LLC, a       6.  **BREACH OF CONTRACT**
   Business    Entity;    DOUBLE    F
19 MANAGEMENT    GROUP,   LLC,    a     7.  **BREACH OF GOOD FAITH AND FAIR**
   Business    Entity;   MORTGAGE          **DEALING**
20 ELECTRONIC         REGISTRATION
   SYSTEMS, INC, a Business Entity; and 8.  **VIOLATION OF TILA**
21 Does 1-10 inclusive,
                                        9.  **VIOLATION OF RESPA**
22
              Defendants.              10. **BREACH OF FIDUCIARY DUTY**
23
                                       11. **UNCONSCIONABILITY**
24
                                       12. **QUIET TITLE**
25
                                       13. **VIOLATION OF BUSINESS & PROFESSIONS**
26
                                       14. **INTENTIONAL INFLICTION OF**
27                                         **EMOTIONAL DISTRESS**
28
                                          **JURY TRIAL DEMANDED**

_____
                     ADVERSARY COMPLAINT